IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

MICHAEL BRADLEY IRELAND                                      PLAINTIFF

VS.                                      CIVIL ACTION NO. 3:12cv445-DPJ-FKB

MICHAEL J. ASTRUE, COMMISSIONER
OF SOCIAL SECURITY                                           DEFENDANT

## REPORT AND RECOMMENDATION

Michael Bradley Ireland brought this action to obtain judicial review of a final

decision of the Commissioner of the Social Security Administration.  Having considered

the memoranda of the parties and the administrative record, the undersigned

recommends that the decision of the Commissioner be affirmed.

### I.  Procedural History and Administrative Record

Ireland was born on October 26, 1956.  He has a ninth grade education.  His past

relevant work experience is as a security guard and truck driver.  Ireland protectively filed

for a period of disability, disability insurance benefits, and supplemental security income

on March 8, 2010, alleging disability as a result of depression, hypertension, high

cholesterol, and back problems.  His applications were denied initially and on reconsidera-

tion, and he requested and was granted a hearing before an administrative law judge

(ALJ).   On August 15, 2011, the ALJ issued a decision denying benefits.  The Appeals

Council denied review, thereby making the decision of the ALJ the final decision of the

Commissioner.  Ireland then brought this appeal pursuant to § 205(g) of the Social

Security Act, 42 U.S.C. § 405(g).

The only medical treatment documented in the record is that of Frank C. Wade, M.D., Ireland's primary care physician.  From 2008 to 2010, Ireland presented to Dr. Wade with symptoms of depression, anxiety, difficulty sleeping, chest pain, back pain, shortness of breath, and, on two occasions, complaints of numbness and tingling in his extremities.  During this period, Dr. Wade treated him for depression, asthma, hypertension, and hyperlipidemia.  A chest x-ray performed on January 20, 2009, showed possible atelectasis in the mid lungs.  In April of 2010, as a result of his complaints of chest pain, Ireland underwent cardiac function tests, which were normal.  An x-ray of the lumbar spine performed in September of 2010 revealed mild scoliosis and a possible loss of height at T10.

Joseph R. Dunn, Ph.D., performed a consultative mental status examination on May 26, 2010.  At the exam, Ireland reported that he had experienced a turbulent childhood and a violent, abusive step-father.  Ireland stated that he is depressed most of the time and tends to be socially withdrawn, although he gets along adequately with others.  During the interview, he described sleep disturbances, memory problems, difficulties in completing tasks, intrusive thoughts of traumatic childhood experiences, a single auditory hallucination, and a belief that he is capable of precognition.   He was oriented as to month but not year.  Ireland did not identify the current president by name and could name only one past president.  He skipped several numbers counting backward from 20, identified as 11 the number of months in a year, and stated that the month following August is July.  He could name four states when asked.  Dr. Dunn's impression was depressive disorder, NOS, anxiety disorder, NOS, rule out PTSD, rule out psychotic

features, and rule out borderline intellectual functioning.  Dr. Dunn described Ireland's prognosis as likely to be guarded.

A consultative physical examination was performed by Justin Brewer, M.D., on October 9, 2010.  Ireland's gait, grip strength, range of motion, and motor strength were all normal.  Straight leg raise while sitting was negative; straight leg raise was positive at 30 degrees while lying down.  Dr. Brewer stated that Ireland's back was completely non-tender and that he had full and unrestricted range of motion throughout the spine.  He opined that Ireland has no limitations associated with his spine.

At the hearing, Ireland testified that he has been unable to work since 2009 due to depression, back pain, chest pain, breathing difficulties, and circulation problems in his arms.  Ireland stated that he cannot sit for extended periods, can stand no more than twenty minutes, and can walk only a block and a half without sitting.  He used a cane to ambulate at the hearing, and he attributed his pain and difficulties walking to an accident in which he broke both of his feet.  Ireland estimated that he can lift ten pounds.  He also described difficulties with personal care activities, such as dressing and getting in and out of the tub.  He testified he cannot afford to purchase some of the medications he is supposed to be taking and cannot go to the doctor because of outstanding medical bills. Ireland gave his height as 5'10" and his weight as 280 pounds.  When asked to identify his most serious medical problem, Ireland responded that it was depression.  He does not like to be around crowds but is able to go to church services at a small country church. He indicated that he sometimes experiences visual and auditory hallucinations.

A vocational expert testified at the hearing.  The ALJ posed the following hypothetical to the vocational expert and asked about such a person's ability to work:  A person of Ireland's age, education, and work experience, who can perform medium work, who should only occasionally climb, balance, stoop, crouch, crawl, or kneel, who should avoid concentrated exposure to pulmonary irritants, and who can perform only simple, repetitive tasks and have only occasional contact with other persons.  The expert testified that such a person could not perform Ireland's past work but could perform the jobs of box tender, hand packer, and linen room attendant, and that these jobs exist in significant numbers in the state and national economies.  The ALJ posed a second hypothetical, describing an identical person who would miss more than four days of work in a month. The expert responded that there would be no work such a person could perform.

## II.  The Decision of the ALJ and Analysis

In his decision, the ALJ worked through the familiar sequential evaluation process for determining disability.[1]  He found that Ireland has the severe impairments of obesity,

---

[1]In evaluating a disability claim, the ALJ is to engage in a five-step sequential process, making the following determinations:

    (1)    whether the claimant is presently engaging in substantial gainful activity (if so, a finding of "not disabled" is made);

    (2)    whether the claimant has a severe impairment (if not, a finding of "not disabled" is made);

    (3)    whether the impairment is listed, or equivalent to an impairment listed, in 20 C.F.R. Part 404, Subpart P, Appendix 1 (if so, then the claimant is found to be disabled);

    (4)    whether the impairment prevents the claimant from doing past relevant work (if not, the claimant is found to be not disabled); and

4

anxiety, depression, and asthma, and the non-severe impairments of scoliosis, hypertension, and recurrent chest pain.  The ALJ found that Ireland does not have an impairment or combination of impairments that  meets or medically equals a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1.  The ALJ further found that Ireland has the residual functional capacity to perform a reduced range of medium work and that he is unable to perform his past relevant work.  Relying upon the testimony of the vocational expert, the ALJ determined that Ireland can perform alternative work and is therefore not disabled.

In reviewing the Commissioner's decision, this court is limited to an inquiry into whether there is substantial evidence to support the findings of the Commissioner and whether the Commissioner applied the correct legal standards.  *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991); *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990).[2]  In his

_____

(5)   whether the impairment prevents the claimant from performing any other substantial gainful activity (if so, the claimant is found to be disabled).

*See* 20 C.F.R. §§ 404.1520, 416.920.  The analysis ends at the point at which a finding of disability or non-disability is required.  The burden to prove disability rests upon the claimant throughout the first four steps; if the claimant is successful in sustaining his burden through step four, the burden then shifts to the Commissioner at step five.  *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).

[2] "To be substantial, evidence must be relevant and sufficient for a reasonable mind to accept it as adequate to support a conclusion; it must be more than a scintilla but it need not be a preponderance. . . ."  *Anderson v. Sullivan*, 887 F.2d 630, 633 (5th Cir. 1989) (quoting *Fraga v. Bowen*, 810 F.2d 1296, 1302 (5th Cir. 1987)).  If the Commissioner's decision is supported by substantial evidence, it is conclusive and must be affirmed,  *Paul v. Shalala*, 29 F.3d 208, 210 (5th Cir. 1994) (citing *Richardson v. Perales*, 402 U.S. 389, 390 (1971)), even if the court finds that the preponderance of the evidence is *against* the Commissioner's decision, *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994).

memorandum, Ireland makes three arguments: (1) That the ALJ failed to apply the correct severity standard to Ireland's back impairment;  (2) that the finding that Ireland's back impairment is non-severe is not supported by substantial evidence, and (3) that the ALJ failed to apply the correct legal standards in considering the effect of Ireland's mental impairment upon his functional abilities to engage in sustained work activities.

The severity standard in this circuit  was established in the case of *Stone v. Heckler*, 752 F.2d 1099 (5th Cir. 1985).  In *Stone,* the Fifth Circuit considered the regulation that defines a severe impairment as one that  "significantly limits [a claimant's] physical or mental ability to do basic work activities," 20 C.F.R. § 404.1520(c), and held that this definition was inconsistent with the Social Security Act.  The court stated the correct severity standard as follows:

> [A]n impairment can be considered as not severe only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience.

*Stone,* 752 F.2d at 1101.  Moreover, the court stated that in the future, it would assume that the ALJ had applied an incorrect standard "unless the correct standard is set forth by reference to [the *Stone* opinion] or another of the same effect, or by an express statement that the construction [given by the *Stone* court] to 20 C.F.R. § 404.1520(c) is used."  *Id.* at 1106.  Ireland argues that remand is required because the ALJ failed to apply the *Stone* standard, observing that the ALJ defined a non-severe impairment as one which causes "no more than a minimal effect on an individual's ability to work."  This language raises the issue of whether this "minimal effect" standard is equivalent to, or at least consistent with, the *Stone* standard.

6

The present confusion concerning the appropriate standard originates in post-*Stone* Social Security Administration rulings.  After *Stone*, the regulations regarding severity remained essentially the same.  However, the Administration responded to *Stone* and its standard by issuing a ruling attempting to clarify its policy for the determination of severity.  In the ruling, the Administration stated that an impairment would be considered non-severe if it was a slight abnormality having only a minimal effect on the ability to work.  SSR 85-28, 1985 WL 56856, at *3 (S.S.A. 1985).  A subsequent ruling used this same "minimal effect" language.  *See* SSR 96-3p, 1996 WL 374181, at *1 (S.S.A. 1996)   Thus, as one court has observed, it appears that the Administration views this minimal limitation standard as consistent with the *Stone* standard.  *See Acosta v. Astrue*, 865 F.Supp.2d 767, 779-82 (W.D. Tex. 2012).  Not surprisingly, ALJs often cite to this regulation or quote its language.

Adding to the confusion in this circuit is the fact that the Fifth Circuit has occasionally used this language in its opinions.  *See*, *e.g.*, *Loza v. Apfel*, 219 F.3d 378, 399 (5th Cir. 2000) (directing that on remand, the ALJ is to determine whether claimant's mental impairments were merely "a slight abnormality of minimal effect on ability to work"); *Brunson v. Astrue*, 387 Fed. App'x 459, 461 (5th Cir. 2010) (unpublished decision) (per curiam) (stating that an impairment is not severe if it has no more than a minimal effect on ability to do basic work activities).  As a result, some district courts in this circuit have concluded that the minimal limitation standard is equivalent to the *Stone* standard.  *E.g.*, *Acosta v. Astrue*, 865 F.Supp. 2d 767, 782-83 (W.D. Tex. 2012).   Other courts,

however, have reached the opposite conclusion.  *See, e.g., Padalecki v. Astrue*, 688 F.Supp.2d 576, 580-81 (W.D. Tex. 2010).

The language of *Stone*, however, is clear:  It allows for a minimal effect *on the individual* but makes *no* allowance for a minimal interference *with the ability to work.* While the Fifth Circuit has occasionally referred to "minimal effect" on the ability to work, it has never specifically addressed the issue of whether this standard is consistent with *Stone.*  The undersigned believes that unless and until the Fifth Circuit holds that a severity analysis may properly allow for a minimal effect on an individual's ability to work, the better course is to apply *Stone* to require that a medically-determinable impairment having any effect on the ability to work be characterized as severe.  Under this interpretation, the ALJ's citation in the present case to the minimal effect standard was erroneous.

However, failure to cite to the correct standard does not necessarily mandate reversal.  *Stone* created only a presumption, and where the ALJ's written decision otherwise indicates that the ALJ applied the correct standard, or where the substantial rights of the plaintiff are not affected, the failure of the ALJ to cite to *Stone* or track its precise language does not require remand.  *See Taylor v. Astrue*, 706 F.3d 600, 603 (5th Cir. 2012); *Hampton v. Bowen*, 785 F.2d 1308, 1311 (5th Cir. 1986); *see also LeBlanc v. Chater*, 83  F.3d 419, 1996 WL 197501, at *3 (5th Cir. 1996) (unpublished table decision) (per curiam).  In the portion of his decision in which he analyzed the severity of Plaintiff's chest pain, scoliosis, and hypertension, the ALJ specifically stated that the record established *no* functional limitations in connection with these conditions.  Thus, the ALJ

8

made no allowance for any effect by Ireland's back problems on his ability to work. Accordingly, remand is not warranted.

Furthermore, the finding that Ireland's back condition is non-severe is supported by substantial evidence.  The record contains no medical evidence of any back condition other than mild scoliosis, and the evaluation by Dr.  Brewer revealed no physical limitations related to his back.  The only indications in the record of any such limitations consist of Ireland's own subjective complaints and testimony: The ALJ properly considered these and determined that they were lacking in credibility and were inconsistent with the objective medical evidence.  Because the record contains substantial evidence to support the ALJ's finding that Plaintiff's back impairment is not severe, that finding must remain undisturbed by this court.

Ireland's final argument concerns the ALJ's assessment of the limitations resulting from Ireland's mental impairment.  He contends that the ALJ committed error in failing to make specific findings as to how this impairment affects Ireland's ability to perform work-related mental activities.  The regulations set forth a specific method, commonly reffered to as the "technique," for determining the severity of a mental impairment.  *See* 20 C.F.R. §§ 404.1520a and 416.920a.[3]  The ALJ is required to perform this analysis if he finds that

---

[3]The technique requires the ALJ to rate the degree of functional loss resulting from the impairment in four areas that are considered to be essential to work:  (1) Activities of daily living, (2) social functioning, (3) concentration, persistence or pace, and (4) episodes of  deterioration or decompensation in work or work-like settings.  The degree of limitation in each of these areas is to be rated as follows:  For numbers (1), (2), and (3), the rating of limitation is to be done on a five-point scale of none, mild, moderate, marked and extreme.   For number (4), a four-point scale of none, one or two, three, and four or more is to be used.  Generally, the conclusion that the impairment is not severe results if the ratings of limitation are none or mild in the first three areas and none in the fourth area.

the claimant has a medically-determinable mental impairment.  *Id.*  If the ALJ determines

that the claimant's mental impairment is severe, he must then make a determination of the

claimant's mental residual functional capacity.  This analysis is more detailed than the

analysis for the determination of severity of the mental impairment and is made by

assessing various specific functions which are generally required by competitive,

remunerative work.  The Social Security Administration has stated that these functions

include the abilities to "understand, carry out, and remember instructions; use judgment in

making work-related decisions; respond appropriately to supervision, co-workers, and

work situations; and deal with changes in a routine work setting.  SSR 96-8p, 1996 WL

374184, at *6 (S.S.A. 1996).

In rating and analyzing the severity of Ireland's mental impairment, the ALJ

determined that Ireland has moderate limitations in the areas of activities of daily living,

social functioning, and concentration, persistence or pace, and that he has had no

episodes of decompensation.  He then continued on with a determination as to Ireland's

mental residual functional capacity.  Ireland argues that the ALJ erred by failing to

specifically address Ireland's ability to respond appropriately to supervision, co-workers,

and work situations and his ability to deal with changes in a routine work setting.

The undersigned concludes that the ALJ did not err in his analysis.  In his written

opinion, the ALJ specifically pointed out the detailed nature of the mental RFC

assessment, and his opinion evinces careful consideration of the effects of Ireland's

---

On the other hand, ratings in the last point for each area represent a degree of limitation
which is considered to be incompatible with the ability to work.  20 C.F.R. §§ 404.1520a,
416.920a.

mental impairment on his ability to work.  Furthermore, his findings that Ireland was limited to performing simple, repetitive tasks and could have only occasional contact with others addressed the extent to which Ireland can deal with work changes and the extent to which he can appropriately respond to supervisors, other workers and work situations. The undersigned concludes that the ALJ adequately considered all applicable limitations in determining Ireland's mental residual functional capacity.

### III.  Conclusion

For the reasons stated herein, the undersigned recommends that Plaintiff's motion be denied, that the Commissioner's motion be granted, and that the decision of the Commissioner be affirmed.  The parties are hereby notified that failure to file written objections to the proposed findings, conclusions, and recommendation contained within this report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions accepted by the district court.  28 U.S.C. § 636; Fed. R. Civ. P. 72(b); *Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

Respectfully submitted, this the 7th day of August, 2013.

/s/ F. Keith Ball
UNITED STATES MAGISTRATE JUDGE

11